Our next case of the afternoon is 410-0091, Reis v. Zimmerman. For the appellant, Mr. Walsh, and for the appellee, Mr. Elwood, you may proceed. You may know that a companion case was recently argued, so we're familiar with the facts. Okay, I'm aware of that case. I'm involved in that as well. Except I have one little problem with you. Your brief suggests that Travis went to the trouble of putting his shoes back on before he left. The appellee's brief says he didn't have shoes on. Who's right? I think the appellee is right. Pardon me? I think the appellee is right. We've conducted discovery since pleading for file. If that's a fact, then if we're allowed to continue, we'll probably close an amendment to the complaint. Third-party defendant Justin Zimmerman argues in the trial court that this is a case, or at least the third-party complaint for contribution is a case that involves social host liability, and so there is no cause of action, and contribution claims should be dismissed. And the trial judge agreed and dismissed the case with prejudice. It is my position that it was in the trial court that this is not a case of social host liability. The facts alleged in counts one and two of the third-party complaint set forth the cause of action in negligence, independent of the serving of alcohol, and that takes the case out of social host. And there is a line of authority, starting in 1977 with the Lesner decision, going through the 1980, the Harris v. Gower case, Supreme Court in 2003 with the Wakulich case, and recently 2010 in the Simmons case where causes of action have been sustained, even though alcohol had some part in the overall occurrence. The cases that I've cited permitted causes of action to go forward because the negligence alleged did not arise out of consumption or service of alcohol, but rather an act of negligence independent of the service of alcohol. And that's what I believe I have set forth in counts one and two of the third-party complaint for contribution. So I think the real question before the court today is whether or not counts one and two of the third-party complaint actually do set forth facts giving rise to a cause of action in negligence independent of the serving of alcohol, and I believe they do. Count one, I call that count my common law, my regular traditional negligence count. There I set forth the facts relating to the party and all the events that occurred before, during, and after, and I believe that under a traditional duty analysis, I have established facts giving rise to a duty. Well, the defendant here is the kid whose house the party was at? The third-party defendant is the kid whose house the party was at, yes, sir. How old was he? Does the record show? Yeah, he was 17 at the time. How old was the decedent? Travis. Travis Steidinger. 15 or 16 I believe at the time. So he had a house and the kids were there at a party, and what tort did he commit? The tort that Justin Zimmerman, that's his house, that he committed was that he put Travis Steidinger in a position of peril, and he did that by having an after-hours, late-at-night teenage drinking party at his house, and he had to know, or if he didn't know, he should have known, that that type of activity in Forrest, Illinois, which is a small town, is going to attract the attention of the law enforcement authorities. And he either knew or he should have known that when the police arrive at a house at 2 o'clock in the morning with a bunch of teenagers drinking beer, some of them, if not all of them, are going to run out of the house. And the problem with all of that was that this party was taking place at a time when it was below zero. The windchill factor was below zero. And so the kids run outside, and they run outside because of the condition that Justice Zimmerman created by having this drinking party, knowing the police are going to show up. The kids run out of the house, which I think is reasonably foreseeable under the facts, and then they don't come back. Most of them do, but Travis doesn't. And Justice Zimmerman knows he doesn't come back, and he doesn't do anything at that time. Is it in plain show where the house was located? Forrest, Illinois. I have an address. In the city of Forrest? I've been in Forrest, Illinois. So, you know, there's a little town there. All right. Well, I have an address. And I've been past the house, and I can tell you it sits outside. Well, isn't this – I ask that because isn't this different than if the house is in the city or the house is out in the country where it's 6 degrees below, and assuming you say it's true, the people are going to run out, and there's no place to go. I mean, do we know or does it matter where everyone lived? I don't think that makes a difference because – Does Steininger live next door? Would that matter? No, because you just don't know where he's going to go. He runs out of the house. That doesn't necessarily mean he's going to go home. Under the facts as you described them, what duty did Zimmerman owe to Steininger? Not to create that condition, that party that led to the police being there, that caused him to run out. And that's reasonably foreseeable. What court is that called? Well, I'm relying on the Harris v. Gower case, Your Honor. That's the case where the bar patron became intoxicated in the bar, and the bar employees haul him out to his car in sub-freezing temperatures, leave him in his car, and then go home. Would Detroit be the same? Let's say it's in town. And they do live. Everybody lives within six blocks, but the weather's the same. And they're all underage, and they don't drive. Let's say they're all 15-year-olds. Would he be obligated to keep them all there, even though each one – I'm going home now, and they walk out the door and die of exposure the same way because they're too intoxicated to make their way three blocks home? It's not so much that he didn't prevent them from leaving, because I don't think he can do that. Right. It's that he knows they're out there, and yet he doesn't do anything to follow up to make sure, one, did they come back, or two, did they go home? So the duty would be the same if he left to go to the barn to make out with a girl. No. And they don't come back. No, because that's voluntary on his part. If he voluntarily leaves the house to go do something else – It's not voluntary when he leaves in response to the police arrival? That's a conscious act on his part. I agree. In that sense, it is voluntary. But the reason that he runs out of the house was not of his own making or choosing. Well, sure it is. Well, I think if the police arrive – You stay or you run. That's right. You pass up or you try to get away. Well, in that sense, that's a voluntary act. But I think the facts are that when teenagers at an underage drinking party and police arrive, they're engaged in a criminal act, a legal act. It's reasonably foreseeable that they might panic, which is exactly what happened here. And you're not exercising good judgment under those circumstances and you just run out in the cold. Well, if good judgment were the test, there would be any number of defendants in this case. That's true. We can't name them all. There are not enough people to name. Well, the essence of my theory is that Justin Zimmerman put this party together, knowing full well that it's going to attract the police. And the police arriving is going to cause a panic and these kids flee. And I believe that under Harris – But in Harris, all kinds of affirmative actions took place. That's right. I mean, yes. I mean, other than someone was drunk and as a result was injured, I mean, that's about the only thing you have in common. Well, you know, what we do have in common is sub-freezing temperatures and both defendants in the case engaging in conduct that caused the decedent to be put outside. Now, in Harris, of course, it's a little more active. I acknowledge that because they picked the guy up and they put him in the car. But I don't know if that's any different than creating a situation where you're going to force people out of your house. And that doesn't happen unless Zimmerman has this party and with alcohol present. So he has a party in the middle of the summer. There's a pool and there's a hot tub. One guy dies in the hot tub because of imbibing alcohol and staying in the hot tub too long. Another guy drowns because of being inebriated. No, I think you get into the social host at that point. I'm alleging conduct independent of the serving or provision of alcohol. I keep mentioning alcohol because that's an important factor to explain. Well, again, in this instance, Zimmerman has the party, the hot tub and the pool. He doesn't provide the alcohol. He figures that his friends are going to bring alcohol, but he doesn't provide it. Nor even encourage it. He just doesn't say, no, you've got to put it away. So is it still more akin to social host? I think if the injury arises out of the provision or consumption of alcohol, you've got social host. But I'm not going that way. Right. Here the injury arises out of creating a situation which is going to prompt a police response and prompt somebody to flee. Right. And that's why I've asserted to count two, which is premised on section 321 of the restatement second of torts. And that's a rule that says if an actor doesn't act and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect. We're not as familiar with that in Illinois, are we? No. We're familiar with it, but we haven't embraced it? It has not been adopted by any court in this state that I'm aware of. I know there was one court, the Brewster Court, that had the issue come up. It did not reject the section. It just chose not to apply it under those circumstances because the facts didn't fit. But I think the facts fit here. The comments of the rule indicate that even if the actor's conduct is innocent at the time it's undertaken, if events change that subsequently put him on notice that a risk has been created, then he has to take steps to avert the consequences of his acts. So even if it's assumed that the party was an innocent event, when the police arrived and people started running outside in this sub-freezing cold and didn't come back under 321, there's a duty imposed on Justin to go find out where Travis went. Is there any indication that Zimmerman told people to leave the house? No. It's not been alleged in Counts 1 and 2, the third-party complaints. Essentially, when the police arrived, the kids ran from the house. The reason I played two counts was Count 1 was I'm trying to fit it in under existing negligence laws that exist in the state of Illinois. And I've gone through my duty analysis and I believe that the facts fit. If the court disagrees, I would ask that Section 321 be looked at, because I think that's more specific to this particular circumstance. And Justin created this condition that put Travis at risk, and then did a simple phone call to the parents, to the police, go out and look, yell, find out where he is. I cited a case from New Jersey. I know it's not binding on this court, but that's the case involving the accident on the interstate where a car hits a motorcyclist, they knock the motorcyclist off, he ends up on the roadway, it's the New Jersey Turnpike, and I've driven up and down that road many times. It's late at night. The driver and the two passengers get out. They see the guy lying on the turnpike and do nothing. They all had cell phones. In fact, they used the cell phones at the scene and left. They didn't call anybody. They left him on the roadway. And the passengers were found to have had the duty under 321. Not to have just left the scene, as the court pointed out, a simple phone call could have remedied the situation. So they pulled over? I believe they pulled off the side of the road on the shoulder and went to the location where the motorcyclist was laying in the traffic lanes. I think that's the fact. I just can't remember. What if they saw it, what if they slowed down and observed it and drove on? But then later said that's what they did. Well, I think if they were aware that that man was lying on the roadway because of something that had been done there, and they had their cell phones, and made phone calls to all people to report this event, except to the law enforcement authorities or the ambulance authorities, that duty may still exist. But under the facts of that case, it was pretty egregious that they did nothing. And I cite a case from, again, Pennsylvania, since Illinois hasn't ruled on the applicability of this section. That's the Cipriani case where the gas pipeline was underground. And what the company that had installed the pipeline had to do was join this outfit or organization called PA1Call. And the whole point of that is to let people know where there's pipelines. And, of course, the obvious happened. They didn't join the organization. No one knew about the presence of the pipeline. An excavating company hit the pipeline, spilling all this gas. And the pipeline company was found liable under 321 because the court indicated or stated that it would have been a very simple thing under this rule to make one simple phone call to join this organization so that everyone would know where that pipeline was located. So this is the situation we find ourselves, that my client finds herself in, is that this whole sorry state of affairs, this tragedy could have been hopefully avoided or potentially avoided if the guy who put this series of events in the place should have then taken the one step necessary to correct it. He created the condition. That condition led to the death of Travis. And perhaps one phone call would have prevented it. Thank you. Thank you, counsel. Mr. Ellert? Thank you. On behalf of Justin Zimmerman. The reason we refer to the social host liability cases is I think it's apparent from the briefs of both parties that when you look at the body of law that relates to alcohol-related events, alcohol-related injuries that stem from some type of social function, the courts have routinely held that there's no liability that arises unless there's an independent duty or a voluntary undertaking. And I think that's what my opponent was trying to articulate to the court. I think that's the gist of the cases that we cited in our brief. What our position is here in this case is that there is no special relationship, there is no independent duty, and there is no voluntary undertaking that was conducted by Justin. And that's why this case was properly dismissed. I don't think it's our position. It's not that this is just clearly a social host case. It's all done and said and done. I think that is the body of law in the background that we have to focus upon from which we get the exceptions for a voluntary undertaking. Now, the one thing that concerns me when I look at this case and I listen to the arguments that were made, what was the voluntary undertaking? And from what I'm hearing, it seems like it was the fact that they held a party. And I'm not sure that there's anything in the law that would say that a person holding a party has done anything other than to create, in the worst case, a condition by which an event might take place. And the law is very well settled that if all a person does, all a defendant does is provide a condition by which another's activities cause, lead to harm, then we don't have a duty, we don't have an obligation there. That's exactly what we have in this particular case. When we look at the allegations of the complaint, the one thing that strikes me is that everything that they're charging Justin with knowledge of or with the ability to reasonably foresee can equally be said about Travis. There's nothing about this that was a latent defect. There's nothing about this which was a hidden danger. There was nothing about this which was something that was discovered by Justin that he didn't know as it related to Travis. And I think when we look at the cases that have been cited, Harris, Wakulik, Lesner, well, Harris and Wakulik in particular, the Tavern employees in Harris carry out a passed out, for lack of a better word, patron and put him in a car in freezing weather. That person's unable to take care of themselves. That is an independent act separate and apart from providing the alcohol. And they took upon themselves, they voluntarily assumed the duty to take care of that individual and they left him in a precarious situation. The person died. It's the same type of situation that we see in the Wakulik case where the two defendants assumed the care of this young girl who had passed out. And the complaint in that case, as the court articulated, laid out a number of functions that the defendants did, a number of acts that the defendants did in that case where they assumed control and the court even went as far in that case to say that as alleged by the plaintiffs, the defendants effectively took complete and exclusive charge of Elizabeth Kerr after she became unconscious. When we look at the facts of this third party complaint for contribution, those type of facts of complete and exclusive control are not there. And again, I come back to what is the voluntary undertaking that was done here? And when we look at the allegations, the worst that can be said is that there was a condition created, but the one who acted upon those conditions in this case was Travis. He's the one that made the decision to flee. He's the one that made the decision to flee in cold weather. And he's the one that made the decision not to come back when he realized it was cold out. And in those situations, to say that Justin had a duty to exercise reasonable care, we just don't see anything in the law that would provide that. And again, I think all the cases look at this as, well, we've got an alcohol-related event. So we're leaning towards the prohibition against social host liability. Let's see if there's something independent that we can hang our hat on here. And when the courts go through those, and they find something that was separate and apart, and an example would be that Simmons case that counsel cited. The Bell case, I believe they cited. I think you cited Bell recently. If not, I don't need to quote the case that you did, right? Is that Bell? No? Okay, never mind. I don't want to talk about a case that's not cited. But anyway, the cases that are in the brief clearly show that there's something else that the court can hang their hat on to say, here's where we find a duty. Here's where there was an action that was taken above merely providing alcohol. And we don't have that action here. So for those reasons, we're asking the court to affirm the dismissal. The court discussed briefly the 321 situation. We think Brewster did reject the application of that. And Brewster's reference to the Glick case from Pennsylvania, I think, really says it all on why 321 presents a problem to us. It's a very expansive, it's a very open-ended measure of responsibility. And the court's question about the case from out east, what if I'm merely driving by and I see a motorcycle with an injured victim lying on the road and I just drive on by? I have nothing to do with the accident. If I don't report that, does 321 say I have liability? I think it perhaps might. And that's the problem that the Glick case has. There's no ability to say, this is a prohibited act and this is not a prohibited act. And I think, as Glick points out, one of the tenets of law, of tort law, is that we want to try to shape people's behavior to avoid unwanted conduct and to encourage positive conduct. And when I don't know what is meant by actions that pose an unreasonable risk, then I can't base my conduct on that type of activity. I can't adjust my behavior to avoid a problem if I don't really know if I'm causing a problem or not. And I think that's what Glick says is not an acceptable result if you pass 321. So again, for those reasons, we ask the court to affirm. Unless there's any questions, I thank you. Thank you. Rebuttal? Well, it was not social host, or excuse me, it was social host at the trial court level. Now it's a voluntary undertaking here. I have an alleged voluntary undertaking. So the argument that it was a voluntary undertaking is not applicable. Duties arise on the basis of facts presented. And in the Harris case, it was a duty not to put somebody in a position of peril. In Lesner, it was a duty to take action when harm was threatened to a bar patron. In Wachowicz, it was a duty in regards to a voluntary undertaking. And in Simmons, it was a duty not to encourage and assist whomatis in torturous conduct of drugs while intoxicated. So this court can find a duty depending on what vehicle it wants to use to implement it. And in this case, I believe Section 321 provides that vehicle. It's not so overreaching as to be a concern. Any theory of recovery can be abused if it's not controlled by the courts and the litigants, and we have that. The Glick case that was cited by counsel, and three years later, the same court in Pennsylvania, actually, in Glick, they chose not to use 321. But three years later, the same court, different division, did use 321. That was the PA-1 call, gas pipeline case. So depending on the facts that are present, that's what leads to the imposition of a duty. The contributory negligence of Travis cannot be equated to the imposition of a duty. Supreme Court in Ward v. Kmart made that discussion. So if we get to duty, then maybe perhaps contributory negligence is an issue. But one does not negate the other. So I believe that the issue is, are there facts asserted to impose a duty in negligence? I believe there have been, and so I would ask the court to reverse the trial for it. Thank you very much. Thank you, counsel. We'll take the matter under advisement.